USDC SCAN INDEX SHEET










```
JPP    12/12/05    9:56
3:05-CV-00916    DALKILIC V. TITAN CORPORATION
*33*
*DECL.*
```

9. Because SOSi is not formally registered to do business in California, it has been assigned a "non qualified" tax identification number (No. 9545454) by the California Franchise Tax Board. This identification number is for the limited purpose of allowing SOSi to make tax payments for the benefit of employees who are deployed elsewhere but claim California as their primary residence. Other than for the limited time period described below, SOSi has not paid taxes to the State for any income as a result of business in California.

10. The last time that SOSi did any work for any customer in the State of California was almost two years ago. Between 1999 and 2003, SOSi assisted the United States Drug Enforcement Administration with some small projects in California on a purchase order basis. In 1999, and then again in 2002, SOSi assisted United States Immigration and Customs Enforcement with a few short projects that lasted as short as a few days and no longer than two months. In 2002, SOSi assisted on a short project for the Los Angeles District Attorney's Office. No work has been performed for any customer in California since November 2003.

11. Because some of the projects before November 2003 required SOSi to assign linguists to perform some work for these customers in California, SOSi did pay state taxes on its state income between 1999 and 2003 (in addition to taxes for the benefit of employees who claim California as their primary residence). During this time, the company also obtained the required registration to do business in California for the limited purpose of performing its work on these projects, but that registration was not renewed in 2004 or 2005.

12. The limited engagements before November 2003 were based on the periodic issuance of 30-day purchase orders by the respective agency customers. Some projects lasted as little as fifteen days, most were no longer than 2-3 months, and perhaps two ran for as long as a year.

13. Even in performing its duties for the longest of these limited engagements, SOSi did not maintain an office, open a bank account, obtain a telephone listing, or station permanent employees in California to manage the local linguists or the purchase orders.

14. In 2003, SOSi began to provide services in Turkey and Iraq as a subcontractor to co-defendant Titan Corporation ("Titan"), which had a prime contract for linguist services with the United States Army Intelligence and Security Command.

15. Pursuant to the SOSi-Titan subcontract, which is managed out of SOSi's New York and Virginia offices, I went to Turkey in approximately February 2003 to assist in recruiting and retaining linguists to support the U.S. Army's efforts related to "Operation Iraqi Freedom."

16. Working through a subcontractor in Turkey named Core Resources Management ("CRM"), SOSi and Titan contracted for the linguist services of Turkish nationals such as plaintiffs for supply to the U.S. Army in Turkey in approximately March 2003. The linguists were hired and paid by CRM in Turkey. When the Turkish government withdrew permission for the United States' operations against Iraq to be staged from Turkey in approximately April 2003, the U.S. Army dismantled its operations in Turkey and so did Titan, SOSi, and CRM. I assisted in dismantling our operations in Turkey, which included terminating the services of linguists such as plaintiffs.

17. Around approximately the same time as these operations were being dismantled in Turkey, the U.S. Army requested Titan to provide Turkish linguists for similar work in northern Iraq under the same prime contract. Titan again requested SOSi, as its subcontractor, to assist. Accordingly, Titan, SOSi, and CRM sought volunteer recruits for the planned work in northern Iraq from amongst some of the linguists who had been retained and whose services had been terminated in Turkey, including plaintiffs.

18. Plaintiffs (and other Turkish linguists) were hired in or around April 2003 on the same basis as they had been hired for work in Turkey, and worked in Kirkuk in northern Iraq for a few months. All were terminated in approximately July 2003, when the task order covering the services of their group of linguists was concluded. This was not long after an interrogation by the U.S. Army of Turkish intelligence officers that plaintiffs reference in their complaint.

19. Plaintiffs never performed any of the subject work as linguists for the U.S. Army in California or in the United States, nor did they obtain any compensation or have any interaction with SOSi in the United States. Instead, plaintiffs were paid exclusively in Turkey and Iraq by

1  CRM, and solely for the services they provided in those countries from approximately March to
2  July 2003.

3      20.    SOSi has not obtained any insurance or taken any other available steps to protect
4  itself in the unlikely event of any litigation in California, especially not for any litigation resulting
5  from its subcontract with Titan for projects in Turkey and Iraq.

6      21.    Since SOSi is a family-owned and operated company with a small corporate
7  management team of three senior executives and neither has any employees nor any other
8  presence in California, defending the present lawsuit in California would place an enormous
9  burden on the company's limited personnel and financial resources.

10      I declare under penalty of perjury that the foregoing is true and correct to the best of my
11  knowledge, and that this Declaration is executed on this __ day of August 2005, in New York
12  City, New York.

_____
Julian Setian