1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  SAVAS DALKILIC and TUNCAY          )    Civil No. 05CV0916 JAH (AJB)
    CELIK,                             )
11                                     )    **ORDER GRANTING IN PART AND**
                        Plaintiffs,    )    **DENYING IN PART**
12  v.                                 )    **DEFENDANTS' JOINT MOTION**
                                       )    **FOR JUDGMENT ON THE**
13  TITAN CORP. and SOS                )    **PLEADINGS**
    INTERNATIONAL, LTD.,               )
14                                     )    **[Doc. No. 75]**
                        Defendants.    )
15  _____  )

16        Now before this Court is Defendants The Titan Corporation and SOS International

17  Ltd.'s (collectively "Defendants") joint motion for judgment on the pleadings.  Doc. No. 75.

18  Plaintiffs Savas Dalkilic and Tuncay Celik (collectively "Plaintiffs") and Defendants fully

19  briefed the issues.  Oral argument was heard on June 7, 2007, with appearances by Michael

20  Morrison for Plaintiffs, and Ari Zymelman and Timothy Horton for Defendants.  This Court,

21  after hearing the oral argument of counsel, took the matters under submission.  After a

22  thorough consideration of the pleadings, files and records in this case, as well as the oral

23  argument of counsel, and for the reasons stated below, this Court hereby GRANTS IN PART

24  and DENIES IN PART motion for judgment on the pleadings.

25                              **BACKGROUND**

26  **1.     Factual Background**[1]

27        Plaintiffs, both citizens of Turkey, are former employees of Defendants.  Defendants

28  _____
         [1] The facts in this background section are taken from Plaintiffs' complaint.

contracted with the military to provide linguistic and interpretive services in Turkey, and later during the Iraq War in 2003.  Plaintiffs were recruited by Defendants in Turkey after responding to advertisements seeking interpreters.  After personal interviews and a written examination, both Plaintiffs were extended offers to work with Defendant Titan Corporation ("Titan") in Mardin, Turkey.  Plaintiffs worked in Turkey for a short period of time.  After their work in Turkey, both Plaintiffs were subsequently extended offers to work in Iraq.

Plaintiffs were concerned with potential legal problems of entering Iraq as Turkish citizens, and voiced their concerns to Defendants.  Plaintiffs were assured by Defendants that the proper documents would be secured from the Turkish Foreign Office in order for Plaintiffs to legally enter Iraq, and that the Turkish government would have full and official knowledge of Plaintiffs' role in Iraq.  Plaintiffs were also allegedly promised compensation of at least $6000 a month, not inclusive of hazard pay, plus social security payments under Turkish law, per diem allowances and medical benefits and training.  Defendants allegedly represented to Plaintiff Celik that "defendants would protect the interpreters in Iraq and that their job duties would exclusively take place within the confines of the United States military bases."  Cplt. at ¶ 26. Plaintiffs specifically allege that Defendants explicitly promised Plaintiffs that they would receive the same treatment as other Titan employees employed in the same position.

Plaintiffs were first flown to Germany by Defendants prior to entering Iraq.  Upon their arrival, Plaintiffs alleged that they did not receive the proper survival training, unlike other Titan employees.  Plaintiffs also assert, that while in Iraq, they were allegedly "required to travel outside of the military base and without any sort of security protection."  Cplt. at ¶ 30. Plaintiffs further allege that they were denied the same access to medical care that their American counterparts received, and were also not paid the salaries and benefits they were allegedly promised.  In addition, Plaintiffs state that their passports and visas were taken from them while employed by Defendants, which took away any means of Plaintiffs challenging their treatment.  Plaintiffs further contend that in May 2003, Turkish military officers informed them that they were illegally present in Iraq because of Defendants' failure to secure the proper authorization from the Turkish government.

Plaintiffs further allege that they were placed in danger after Defendants instructed Plaintiff Dalkilic to provide translation services for the U.S. military during the interrogation of Turkish special forces officers regarding an assassination attempt on the Mayor of Kirkuk. Plaintiff Celik was also allegedly interrogated by Turkish intelligence officers who were attempting to locate the captured Turkish special forces officers.   Defendants allegedly recognized the danger in which Plaintiffs were placed, and agreed to house Plaintiffs in safe houses in the Baghdad area.   During this period, Plaintiffs could not perform interpreter services, and were forced instead to act as drivers for Defendant Titan and carry weapons to protect themselves.   As a result of Defendants' actions, Plaintiffs allege that they were forced to seek asylum in the United States, and could not return to Turkey to be with their families.

### 2.   Procedural Background

On April 29, 2005, Plaintiffs filed their complaint seeking damages for fraud and deceit (Claim 1), negligent misrepresentation (Claim 2), promissary estoppel (Claim 3), breach of oral contract (Claim 4), breach of the covenant of good faith and fair dealing (Claim 5), intentional infliction of emotional distress (Claim 6) and negligence (Claim 7) causes of action.

Defendant Titan filed a motion to dismiss for improper venue on December 8, 2005.[2] *See* Doc. No. 28.  Defendant SOSI filed a limited joinder with Defendant Titan's motion, joining only as to the motion to dismiss for improper venue, and declining to join in the motion to transfer.  Doc. No. 34.  Plaintiffs filed under seal an opposition to Defendant Titan's motion on February 3, 2006.  Doc. No. 40.  Defendant Titan filed a reply on March 1, 2006.  *See* Doc. No. 45.  Defendant SOSI filed a reply in support of its joinder motion to Defendant Titan's motion to dismiss.  Doc. No. 46.

On December 9, 2005, Defendant SOSI filed a motion to dismiss for lack of personal jurisdiction.  Doc. No. 31.  Plaintiffs filed an opposition on February 3, 2006.  Doc. No. 36. On March 2, 2006, the parties stipulated to an extension of time for Defendant SOSI to file a reply brief.  Doc. No. 44.  Defendants filed a reply brief on March 3, 2006.  *See* Doc. No. 47.

---

[2] Defendant Titan previously filed a motion to dismiss for improper venue on August 22, 2005, and October 13, 2005.  *See* Doc Nos. 7 and 15.  Both motions were subsequently withdrawn.  Doc. Nos. 14 and 25.

06cv1124

1   On March 9, 2006, Plaintiffs filed an <u>ex parte</u> application to file supplemental briefing.  Doc.

2   No. 50.  Defendant SOSI filed a response to Plaintiff's <u>ex parte</u> application and accompanying

3   supplemental briefing.  Doc. No. 51.  On March 10, 2006, Defendant SOSI filed an <u>ex parte</u>

4   application with this Court for leave to file a first amended reply memorandum and a first

5   amended declaration from SOSI's declarant, Julian Setian.  Doc. No. 52.  On March 14, 2006,

6   this Court granted Defendant SOSI's leave to file a first amended reply and declaration.  Doc.

7   No. 54.  The Court also granted Plaintiffs' <u>ex parte</u> request to file supplemental briefing to

8   Defendant SOSI's motion to dismiss.  Doc. No. 57.  Plaintiffs filed supplemental briefing on

9   March 14, 2006.  Doc. No. 58.  On March 13, 2006, this Court took both motions to dismiss

10  under submission pursuant to CivLR 7.1(d.1).  Doc. No. 53.  On May 30, 2006, this Court

11  denied the motions to dismiss in its entirety.  Doc. No. 59.  Both parties filed answers to the

12  complaint on July 13, 2006.

13       On December 21, 2006, Magistrate Judge Anthony Battaglia issued an Order following

14  the parties' settlement conference, and indicated that the parties could not settle the case

15  because they "need to proceed with a motion for judgment on the pleadings to help identify the

16  issues that will be ultimately litigated."  Doc. No. 72 at 1.  Judge Battaglia indicated that such

17  a motion "may help bring the case back into a settlement posture."  <u>Id.</u>  Judge Battaglia set

18  forth a briefing schedule for the motion for judgment on the pleadings, and set a hearing date

19  of June 7, 2007.

20       On February 28, 2007, Defendants filed a joint motion for judgment on the pleadings.

21  Doc. No. 75.  Plaintiffs filed a response in opposition on April 30, 2007.  Doc. No. 81.

22  Defendants filed a reply on May 21, 2007.  Doc. No. 83.  Oral argument was held on June 7,

23  2007.  The Court subsequently took the matter under submission pursuant to Civ.LR 7.1(d.1).

24                                      **DISCUSSION**

25  **I.    Legal Standard - Motion for Judgment on the Pleadings**

26       Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the

27  pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."

28  Fed.R.Civ.P. 12(c).  Judgment on the pleadings is proper only when there is no unresolved issue

of fact and no question remains that the moving party is entitled to a judgment as a matter of law.  Torbet v. United Airlines, Inc., 298 F.3d 1087, 1089 (9th Cir. 2002); Honey v. Distelrath, 195 F.3d 531, 532-33 (9th Cir. 1999).  The standard applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6) motions.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  Thus, the allegations of the non-moving party are accepted as true, and all inferences reasonably drawn from those facts must be construed in favor of the responding party.  Id.  If matters outside of the pleadings are presented to and not excluded by the court, a motion for judgment on the pleadings shall be treated as one for summary judgment pursuant to Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.  Id.

Judgment on the pleadings is not appropriate where the complaint alleges facts which, if proved, would permit recovery.  See General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  Conclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings.  In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**II.    Analysis**

Defendants seek to dismiss Plaintiff's complaint on the basis of Turkish, California and Pennsylvania law.  In particular, Defendants assert: 1) Turkey's one year statute of limitations bars any tort claim arising out of alleged conduct in Turkey; 2) the alleged remaining allegations based on conduct in Iraq and Pennsylvania cannot survive because the allegations did not rise to the level of outrageous conduct allowing emotional distress; 3) Plaintiffs' breach of oral contract claims fail because the alleged terms are too uncertain and the alleged oral contract is barred by the statute of frauds; 4) the lack of direct physical injury precludes an award of emotional damages under California and Pennsylvania law; and 5) punitive and future damages awards are too speculative.

**A.    Torts Claims (Claim 1-2 and 6-7) Statute of Limitations**

Defendants first contend that Plaintiffs' first (fraud and deceit), second (negligent

misrepresentation), sixth (intentional infliction of emotional distress) and seventh (negligence) causes of action, to the extent that they are based on conduct in Turkey, fail because the causes of action are outside the applicable Turkish statute of limitations.   Doc. No. 75 at 7. Defendants assert that under choice of law rules, California's substantive laws apply to the instant action.   Id.   Defendants state that California law views statute of limitations as procedural, and therefore "governed by California law without regard to the substantive law California law would choose."   Id., citing Zellmer v. Acme Brewing Co., 184 F.2d 940, 942 (9th Cir. 1950).   Defendants furthermore claim that California's borrowing statute goes further to "'prevent[] residents of other states with claims that are barred in the jurisdiction in which they arose from using the California courts to prosecute an action."   Id., citing to Cossman v. DaimlerChrysler Corp., 108 Cal.App.4th 370, 376 (2003).   Defendants assert that through California's borrowing statute, Turkey's one-year statute of limitations bars Plaintiff's claims for fraud and deceit, negligent misrepresentation and negligence.   Id. at 7-8, citing to Cerrhoglu Decl. at ¶¶ 3-5.

Plaintiffs rebut, contending instead that California, not Turkish, law applies to their claims.   Doc. No. 81 at 1.   Plaintiffs first argue that Defendants' choice of law theory regarding statute of limitations law is incorrect, and that Defendants' citation to Zellmer "no longer accurately reflects California law in this area."   Id. at 8.   Instead, Plaintiffs assert that California no longer applies the traditional analysis, but rather a "governmental interest analysis" to determine choice of law questions.   Id. at 8-9.   Plaintiffs contend that applying a governmental interest analysis, California, not Turkish, statute of limitations law would apply.   Plaintiffs also assert that the claims are more closely connected to Iraq, not Turkey, since "[t]he only thing occurring in Turkey was Plaintiffs' recruitment by Defendants."   Id. at 9.   As a result, Plaintiffs claim that California's statute of limitations law would not bar Plaintiffs' tort claims.   Finally, Plaintiffs argue that California's borrowing statute is inapplicable to Plaintiffs because their claims did not accrue, and therefore did not "arise under" the borrowing statute, until Plaintiffs were physically in Iraq, not Turkey, and Defendants have not met their burden of proving that Iraq's statute of limitations would bar their claims.   Id. at 12-13.

1    In reply, Defendants reject Plaintiffs' assertions equating "accruing," or starting the clock

2   for statute of limitations purposes, and the element "arising under" as required by California's

3   borrowing statutes.  Doc. No. 83 at 2.  Defendants also assert that even under California's

4   governmental interest test, Turkey's statute of limitations law would apply.  Id.

5           1.    California's Borrowing Statute

6           Defendants contend that any choice of law analysis applied is irrelevant because

7   California's borrowing statute requires that this Court apply the statute of limitations of

8   another state where: "(1) foreign citizens (such as Plaintiffs) attempt to use California courts

9   to assert (2) claims that are ***barred*** in the jurisdiction in which they arose."  Doc. No. 83 at 2,

10  citing to Cossman, 108 Cal.App.4th at 375, 376 (emphasis in original).

11          California Code of Civil Procedure § 361 states in relevant part that:

12          When a cause of action has arisen ... in a foreign country, and by the laws thereof an
            action thereon cannot be maintained against a person by reason of the lapse of time, an
13          action thereon shall not be maintained against him in the State, except in favor of one
            who has been a citizen of this State, and who has held the cause of action from the time
14          it accrued.

15  Cal. Civ. Proc. Code § 361 (West 2006).  California's borrowing statute discourages forum

16  shopping by foreign plaintiffs by "borrowing" the statute of limitations from the state in which

17  the cause of action arose.  Giest v. Sequoia Ventures, Inc., 83 Cal.App.4th 300, 303 (2000).

18  Plaintiffs here do not disagree that the events complained of occurred "in a foreign country,"

19  nor do they argue that the exception to § 361 applies to them.  Accordingly, this Court is bound

20  to apply California's borrowing statute to determine if the foreign country's statute of

21  limitations would have barred the action.  *See* Cossman, 108 Cal.App.4th at 378.

22          Plaintiffs' argument that California's borrowing statute is inapplicable because the statute

23  "only applies if the action has 'arisen' in another state where the action cannot be maintained

24  because of lapse of time" is unpersuasive.  *See* Doc. No. 81 at 12.  Plaintiffs contend here that

25  the cause of action "arises" under the borrowing statute "when the statute of limitation

26  commences."  Id.  Plaintiffs conclude that because the cause of action accrued in Iraq, and

27  because Defendants fail to discuss Iraq's statute of limitations law, their motion must fail.  Id.

28  at 13.  To determine where the cause of action accrued, a court must look to "the time when,

and the place where, the act is unlawfully committed or omitted." <u>Vestal v. Shiley</u>, 1997 WL 910373, * 2 (C.D. Cal. Nov. 17, 1997). In California, a tort cause of action arises when the wrongful act is committed, even though damages resulting from the tort was not sustained at that time, and even though the plaintiff may not know that a tort has been committed. <u>Rash v. Bomatic, Inc.</u>, 2005 WL 503929, * 7 (Cal.App.4 Dist., Mar. 4, 2005), citing to <u>Collins v. County of Los Angeles</u>, 241 Cal.App.2d 451, 457-58 (1966). Plaintiffs' argument, therefore, that a cause of action "arises under § 361" occurs when the statute of limitations time period begins is an incorrect statement of the law. Accordingly, this Court must determine under § 361 "when (and where) a cause of action has arisen" for each applicable claim asserted by Plaintiffs.[3]

> a.   <u>Claims 1 and 2: Fraud and Deceit, and Negligent Misrepresentation</u>

Defendants argue that a fraud claim arises at the time when the fraud is committed, "i.e. at the time the defendant makes a knowingly false statement of fact with the intent to induce reliance on that statement." Doc. No. 83 at 4, fn. 7, citing to <u>Kwan v. Schlein</u>, 441 F.Supp.2d 491, 503-04 (S.D.N.Y. 2006). In response, Plaintiffs counter that the cause of action arose in Iraq because "it was in Iraq that Plaintiffs discovered the promises made by Defendants were in fact false." Doc. No. 81 at 10.

Plaintiffs in claim 1 bring a cause of action for fraud and deceit of Defendants' alleged representations and promises made to Plaintiffs, including that:

> 1) plaintiffs would not be taken to Iraq without the permission of the Turkish government; 2) plaintiffs would be employed by defendants between 5 and 10 years; 3) plaintiff Dalkilic would receive between $5000-6000 per month for his services in Iraq and additional money for hazard pay; 4) plaintiff Celik would receive the same pay as an "Admin" as other Admins in Iraq; 5) plaintiff Celik as an Admin would receive $7000 per month plus hazard pay; 6) plaintiffs would receive a per diem for any work outside of Kirkuk; 7) plaintiffs would receive social security payments (as required by Turkish law); 8) plaintiffs' job duties in Iraq would take place exclusively within the confines of the military base; 9) plaintiffs would receive the same medical care, including vaccinations, as American interpreters in Iraq; 10) plaintiffs would not be required to carry firearms and serve as drivers in Iraq; and 11) plaintiffs would not be required to participate in military actions with USAF troops.

Cplt. at ¶ 50. Claim 2 mirrors the actions recited in claim one absent any intent by

---

[3] Because this Court finds that California's Borrowing Statute applies, it will not address the parties' governmental interest analysis discussion.

1  Defendants.  Id. at ¶ 62.  In California, the elements of fraud are: 1) misrepresentation,  2)

2  knowledge of falsity; 3) intent to defraud, i.e. to induce reliance; 4) justifiable reliance; and 5)

3  damages.  Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).  "The elements of negligent

4  misrepresentation are similar to intentional fraud except for the requirement of scienter."

5  Charnay v. Cobert, 145 Cal.App.4th 170, 184 (2006).

6        Upon review of Plaintiffs' complaint, the Court finds that the actions Plaintiffs

7  complained of in claims 1 and 2 arose from Defendants' alleged fraudulent conduct in Turkey.

8  For example, the complaint states that "[u]nbeknowst to plaintiffs, defendants failed to secure

9  the approval of the Turkish government prior to flying them to Germany and Iraq," i.e. when

10  Plaintiffs were still in Turkey.  Id. at ¶ 29.  Plaintiffs' own complaint, therefore, admits that the

11  alleged fraudulent action of Defendants failing to secure permission from the Turkish

12  government arose in Turkey.  Similarly, the complaint explicitly states that the conditions of

13  employment that Plaintiffs claim were made fraudulently or were negligently misrepresented

14  all occurred in Turkey.  See Id. at ¶¶ 25-28.  Thus, even if Defendants had breached the alleged

15  contract in Iraq by allegedly forcing Plaintiffs to carry firearms or travel outside the military

16  base, the cause of action arose where the fraudulent inducement occurred and was completed,

17  i.e. in Turkey when the offer of employment was allegedly fraudulently made.

18        Accordingly, because the causes of action for fraud and deceit and negligent

19  misrepresentation arose in Turkey, Plaintiffs are citizens of Turkey, and one of the defendants

20  is a citizen of California, California's borrowing statute under Cal. Civ. Proc. Code § 361

21  requires that this Court apply Turkey's statute of limitations to Plaintiffs' fraud claims, and not

22  California.

23                    b.    Turkish Statute of Limitations

24        Defendants contend that Turkey's "one-year statute of limitations" bars Plaintiffs'

25  claims.  Doc. No. 75 at 8.  Defendants cite to a declaration by Mr. Cerrahoglu, a Turkish

26  attorney practicing since 1973, for support, who states that:

27        Under Turkish law, the statute of limitations applicable to tort claims is set forth in
        Article 60 of the Turkish Code of Obligations.  That article provides that such claims are
28        barred after one year from the date when the damages person has received knowledge of
        the damage and of the identity of the person who is liable.  However, if the claim results

from an act which is illegal under criminal law, and is, in accordance with criminal law is [sic] subject to a longer period of limitation by statute in accordance with criminal law then such period of limitation by statute shall also apply to the civil claim.

Cerrahoglu Decl. at ¶ 3.  The Court notes that Plaintiffs do not appear to dispute Defendants' contentions regarding Turkey's one-year statute of limitations.  See Transcript at 9:3-22; 29:11-15.  Nor do Plaintiffs allege any criminal law related statute of limitations period applies.

Plaintiffs plead in the complaint that they sought asylum as they were allegedly instructed to do by Defendant Titan on July 31, 2003, after arriving at Ramstein Air Force in Germany.  Therefore, at the latest, the application of Turkey's statute of limitations would run on July 31, 2004.  The instant complaint was filed on April 29, 2005, long after the one-year deadline expired.  Accordingly, this Court GRANTS dismissal of Plaintiffs' causes of action for fraud and deceit, and negligent misrepresentation, claims 1 and 2 of the complaint.

c.   <u>Claims 6 and 7: Intentional Infliction of Emotional Distress ("IIED") and Negligence</u>

Plaintiffs assert that "a cause of action for intentional infliction of emotional distress is not completed until the Plaintiff suffers severe emotional distress."  Doc. No. 81 at 10, citing to <u>Mollko v. Holy Spirit Association for the Unification of World Christianity</u>, 46 Cal.3d 1092, 1120 (1988) (rev'd on other grounds). Defendants contend that they "have been unable to find a case that supports Plaintiffs' proposition, *i.e.*, that the tort of IIED does not 'arise' until the plaintiff actually suffers the distress."  Doc. No. 83 at 4.  Defendants also add that it would be "perverse to suggest that the same alleged tortuous conduct (*i.e.*, misrepresentations in Turkey) should be judged by two different jurisdictions' statutes of limitation for the purposes of the borrowing statute depending on whether the claim is for fraud or for IIED."  <u>Id</u>.

The elements for intentional infliction of emotional distress ("IIED") in California include: "'1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the plaintiff's suffering severe or extreme emotional distress; and 3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  <u>Conroy v. Regents of University of California</u>, __ Cal.Rptr.3d __ (Cal.App. 4 Dist. May 23, 2007), quoting <u>Davidson v. City of Westminster</u>,

10

32 Cal.3d 197, 209 (1982).  The tort of negligence requires a party demonstrate a duty by the defendant, breach of that duty, causation and resulting damages.  <u>Burgess v. Superior Court</u>, 2 Cal.4th 1064, 1072 (1992).

Plaintiffs assert in the complaint that the alleged actions perpetrated on Plaintiffs, *i.e.* the interrogation of Turkish soldiers, failing to secure proper permission from the Turkish government for Plaintiffs in order for them to properly return to their native country, failing to take "corrective and ameliorative action" after the Turkish soldiers were interrogated, and failing to assist in asylum proceedings directly resulted in the suffering of severe emotional distress by Plaintiffs.  *See* Cplt. at ¶ 87.  Thus, taking the factual allegations in the complaint as true and in a light most favorable to Plaintiff, as this Court must do, Plaintiffs' emotional distress claim arose not in Turkey, but after Plaintiffs were either in Iraq, or in the United States applying for asylum.

Defendants' generalized argument that it would be a "perverse" outcome should this Court apply two different statute of limitations for causes of action originating from the same contract is not persuasive.  *See* Doc. No. 83 at 4.  In <u>S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.</u>, 641 F.2d 746 (9th Cir. 1981), the court recognized in California that where choice of law issues arise, "a separate choice-of-law inquiry must be made with respect to each issue in a case."  <u>Id.</u> at 749, citing to <u>Beech Aircraft Corp. v. Superior Court of Los Angeles</u>, 61 Cal.App.3d 501, 518 (1976).[4]  Accordingly, the Court finds it is the issue and tort claim at hand, and not the underlying contract, that determines the choice of law issues here.

For the reasons stated above, this Court finds that the cause of action arose after the alleged oral contract was entered into, and therefore outside of Turkey.  The parties do not disagree that if Defendants' tortuous actions arose in Iraq, California's statute of limitations law would apply as a result of Coalition Provisional Authority 17.  *See* Transcript at 28:5-13.  For

---

[4]  The Court is mindful of the principle of dépeçage, which "erects a framework under which issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states."  <u>Putnam Res. v. Pateman</u>, 958 F.2d 448, 465 (1st Cir. 1992); citing <u>Hunter v. Greene</u>, 734 F.2d 896, 901 (2d Cir. 1984); <u>Broome v. Antler's Hunting Club</u>, 595 F.2d 921, 923 n.5 (3d Cir. 1979).  Courts apply this principle in diversity cases where the laws of one state do not govern other issues in the case.  Courts, instead, apply a separate choice of law inquiry for each issue in the case

06cv1124

the purposes of this motion, this Court agrees.  Thus, in regards to the actions complained of in Iraq, the Court applies the applicable California statute of limitation.  In regards to actions complained of in Pennsylvania, the Court finds that the statute of limitations from this foreign state applies.  Because California and Pennsylvania's statute of limitation laws do not bar Plaintiffs' claim for intentional infliction of emotional distress and negligence, the Court hereby DENIES Defendants' motion for judgment on the pleadings of Plaintiffs sixth and seventh causes of action on statute of limitations grounds.

> B.     IIED and Negligence

>> 1.     IIED - Iraq Actions and Application of California Law (Claim 6)

Defendants assert that Plaintiffs' complaint does not meet the requirements for sustaining a cause of action for IIED under California law.  Doc. No. 75 at 13.  Defendants contend that Plaintiffs "fail to show the existence of extreme and outrageous conduct necessary to support a claim for IIED."  Id.  Defendants instead claim that Plaintiffs' complaint must "allege conduct that is 'beyond the bounds of human decency.'"  Id.  Defendants conclude that "[a] defendant may not be 'subject to liability for infliction of emotional distress when it has merely pursued its own economic interests and asserted its legal rights.'"  Id. at 15, citing to Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 885 (1989).

The elements for intentional infliction of emotional distress in California include: "'1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the plaintiff's suffering severe or extreme emotional distress; and 3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Conroy v. Regents of University of California, __ Cal.Rptr.3d __ (Cal.App. 4 Dist. May 23, 2007), quoting Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982).  Although the question of whether a defendant's conduct is "outrageous" normally presents an issue of fact for a trier of fact, a reviewing court may, as a matter of law, determine if "defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  Trerice, 209 Cal.App.3d at 883.

In the complaint, Plaintiffs allege that Defendants' conduct, including the omission of

12

1   obtaining proper permission for Plaintiffs to work in Iraq, the forced interrogation of Turkish

2   soldiers even when non-Turkish citizens who spoke Turkish were available, as well as the alleged

3   ramifications as a result of the threats received, including the movement of Plaintiffs to safe

4   houses, expulsion of Plaintiffs from safe houses during the day and being forced to spend the

5   days on the street without security protection, requiring Plaintiffs to drive vehicles for Titan

6   officials around Baghdad, and being asked to carry firearms, resulted in "extreme anguish."

7   Cplt. at ¶¶ 36-43. Defendants contend that these actions as a matter of law do not rise to the

8   level needed to sustain a cause of action because the work assignments were merely

9   "objectionable." Doc. No. 75 at 15. This Court disagrees with Defendants. A reasonable

10  person viewing the complaint's factual allegations may conclude that Defendants' conduct of

11  forcing Plaintiffs to perform work involving the interrogation of Turkish soldiers which resulted

12  in  threats against their well-being, removing Plaintiffs to safe houses during the night, but

13  forcing Plaintiffs to spend the days on the streets of Baghdad without security protection, as

14  well as the other alleged actions, rise to the level of extreme and outrageous conduct and

15  indecent human behavior. The Court, therefore, finds that it cannot determine as a matter of

16  law that Defendants' conduct fails to rise to a threshold level, and that a trier of fact, not this

17  Court, must determine whether Defendants' conduct would rise to a level that is actionable

18  under California's IIED laws. Accordingly, this Court DENIES Defendants' motion to dismiss

19  Plaintiffs' IIED claims for actions occurring in Iraq.

20                          2.    IIED - Pennsylvania (Claim 6)

21          Defendants argue that Plaintiffs cannot sustain a cause of action for IIED in

22  Pennsylvania because of Pennsylvania's heightened standards. Doc. No. 75 at 15. Defendants

23  also assert that no physical harm has come to Plaintiffs, and therefore they assert no cause of

24  action for IIED. Plaintiffs refute these contentions. Plaintiffs point out that "allowing Plaintiffs

25  to sit in prison in Pennsylvania pending their asylum proceedings is extreme and outrageous

26  conduct under any definition of the term." Doc. No. 81 at 18. Plaintiffs assert that

27  Defendants refused to acknowledge Plaintiffs' status as employees of Defendants. Id.

28          In Hoy v. Angelone, 554 Pa. 134 (1998), the Pennsylvania Supreme Court made clear

upon reviewing several cases where the IIED causes of action were found,[5] the standard for

establishing a cause of action for IIED:

> [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society ... [I]t has not been enough that the defendant has acted with intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Id.* at 150.  From the facts alleged in this complaint, this Court cannot say with legal certainty

that Defendants' alleged actions do not rise to the level of even the higher degree of scrutiny

for IIED under Pennsylvania law.  A reasonable trier of fact may find that Defendants' actions

which allegedly resulted in the incarceration of Plaintiffs for over three months in a detention

facility in Pennsylvania amounted to a sufficient  showing of IIED.  Accordingly, taking the

factual allegations in the complaint as true, and in a light most favorable to Plaintiffs, this Court

DENIES at this stage Defendants' motion for judgment on the pleadings of Plaintiffs' IIED

claim for events that arose in Pennsylvania.

### 3.   Negligence - California (Claim 7)

Defendants next contend that the complaint cannot sustain a cause of action for

negligence under California law because of the "absence of sufficient allegations of physical

impact or physical injury [which] bars the recovery of emotional distress damages when a

defendant's conduct is merely negligent."  Doc. No. 75 at 17, citing to Erlich v. Menezes, 21

Cal.4th 543, 558-59 (1999); Branch v. Homefed Bank, 6 Cal.App.4th 793, 800-01 (1992);

Simmons v. Pacor, Inc., 674 A.2d 232, 236-37 (Pa. 1996).  In response, Plaintiffs contend that

the complaint sufficiently alleges that they "suffer and continue to suffer severe emotional and

mental distress, anguish, humiliation, embarrassment, fright, shock, *pain, discomfort* and

---

[5] Papieves v. Lawrence, 437 Pa. 373 (1970) (defendant, after striking and killing plaintiff's son with an automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where the body was discovered two months later and returned to parents);  Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); and Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979)( defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).  Hoy at 150-51.

anxiety." Doc. No. 81 at 19, citing to complaint.  Plaintiffs also argue that Defendants are incorrect in their assertions that pecuniary loss, such as loss of earnings, cannot be recovered under a negligence action.  Id. at 19.  Finally, Plaintiffs assert that Burgess v. Superior Court, 2 Cal.4th 1064 (1992) allowed for recovery in the absence of alleged physical harm where Plaintiffs allege "*serious* emotional distress."  Id. at 20, citing to Burgess, 2 Cal.4th at 1079.  In reply, Defendants rebut that "pain and suffering" are physical injuries under California law. Doc. No. 83 at 9.  Instead, Defendants assert that emotional distress subsumes such injury, including physical pain.  Id., citing Deevy v. Tassi, 21 Cal.2d 109, 120 (1942).  Defendants also reply that Plaintiffs, as employees, are not owed any special duty because of a pre-existing relationship, and thus argue that Plaintiffs also fail to show causation and duty as required under a negligence claim.

To assert a cause of action for negligence under California law, a party must show a duty owed to plaintiff, and a breach of that duty which resulted in damages to plaintiff.  In Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965 (1993), the California Supreme Court reiterated the general rule that the lack of physical injury does not bar a party's claim for negligent infliction of emotional distress.  Id. at 986.  ("Significantly, we recently reaffirmed the principle that in California, 'damages for negligently inflicted emotional distress may be recovered in the absence of physical injury or impact.'"), citing to Burgess, 2 Cal.4th at 1074.  In addition, the California Supreme Court made clear that such a principle did not require the establishment of a "pre-existing relationship."  Id. ("Contrary to amici curiae's assertions, this principle has never been restricted to cases involving bystanders or preexisting relationships.").  Accordingly, to the extent that Defendants argue Plaintiffs' cause of action for negligent infliction of emotional distress fail under California law for lack of pleading physical injury and lack of a pre-existing relationship, this Court finds Defendants' arguments unpersuasive.

Defendants also argue that Plaintiffs can prove no proximate cause or duty to sustain a negligence cause of action.  Doc. No. 83 at 9.  Plaintiffs rebut Defendants' contention, stating that under California law, "Defendants owed Plaintiffs a duty to protect them from foreseeable harm arising from their employment."  Doc. No. 81 at 21.  In reply, Defendants state that an employer-employee relationship does not automatically create a duty by the employer for

1  negligence purposes.  Doc. No. 83 at 9 fn. 17.

2       In <u>Souza v. Pratico</u>, 245 Cal.App.2d 651 (1966), the court analyzed whether the creation

3  of unsafe work conditions breached a duty of the "employer owed to his employee to provide

4  a safe place to work." <u>Id.</u> at 661-62.  The <u>Souza</u> court answered in the affirmative, finding that

5  "negligence in this respect ... proximately contributed to the employee's injuries." <u>Id.</u>  Turning

6  to the factual allegations in the complaint and taking them as true and in a light most favorable

7  to Plaintiffs, the Court finds that Plaintiffs sufficiently alleged a proximate cause or duty in

8  their complaint by disclosing that despite the knowledge of the dangerous situation repeatedly

9  created by Defendants, Plaintiffs were continually exposed to these dangerous situations. For

10 example, Defendants' alleged actions of forcing Plaintiffs to participate in the interrogation of

11 Turkish soldiers, notwithstanding knowing the dangers of such actions, created an unsafe

12 environment for Plaintiffs, thereby proximately causing any injuries that flowed from

13 Defendants' actions.   Accordingly, for the reasons stated above, this Court DENIES

14 Defendants' motion for judgment on the pleadings of Plaintiffs' claims for negligence arising

15 from actions taking place in Iraq.

16              4.    <u>Negligence - Pennsylvania Actions (Claim 7)</u>

17       In contrast to California, however, Pennsylvania law requires either direct physical injury

18 flowing from defendant's negligence, or from plaintiffs being placed in the "zone of danger,"

19 *i.e.* where plaintiffs are placed in personal danger of "physical impact because of the direction

20 of a negligent force against him and where plaintiff actually did fear the physical impact."

21 <u>Hough v. Meyer</u>, 2002 WL 1764126 *485 (Pa.Com.Pl. 2002).  Under the physical impact rule,

22 "where ... a plaintiff sustains bodily injuries, even though trivial or minor in character, which

23 are accompanied by fright or mental suffering directly traceable to the peril in which the

24 defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of

25 damages." <u>Shumosky v. Lutheran Welfare Services of Northeastern PA, Inc.</u>, 784 A.2d 196,

26 201 (Pa.Super. 2001).  Such physical injury, therefore, must manifest itself as a direct result

27 of the negligent actions defendants allegedly undertook.

28       Plaintiffs plead no direct or indirect physical injury as a result of Defendants' alleged

negligence for actions occurring in Pennsylvania.   Plaintiffs only complain that they

"languish[ed] in incarceration for three and a half months until they were granted asylum." Cplt. at ¶ 47.   Plaintiffs argue that they did plead pain and discomfort in their complaint. However, "consequent psychological and emotional pain and suffering" is not compensable under a negligence claim without suffering some physical injury as a direct result of a defendant's actions.   Additionally, Plaintiffs do not allege that Defendants actions in Pennsylvania placed Plaintiffs in a "zone of danger" under Pennsylvania law.   Botek v. Mine Safety Applicance Corp., 531 Pa. 160 (1992).  Accordingly, this Court GRANTS Defendants' motion for judgment on the pleadings of Plaintiffs' claim for negligence for actions arising in Pennsylvania.

5.   Punitive Damages - California Law (Claim 7)

Defendants finally contend that Plaintiffs cannot recover punitive damages under a negligence theory.  Doc. No. 75 at 19.  Defendants assert that the complaint fails to allege Defendants' actions rise to the level necessary for punitive damages, *i.e.* a showing of oppression, fraud or malice. Id.  Plaintiffs rebut Defendants' contentions, asserting instead that "California law holds that where non-intentional torts involve conduct performed without an intent to harm, punitive damages may still be assessed 'when the conduct constitutes conscious disregard of the rights or safety of others.'"  Doc. No. 81 at 21, citing to Ford Motor Co. v. Home Ins. Co., 116 Cal.App.3d 374, 381 (1981).  In Ford, the California appellate court found that non-intentional conduct could also give rise to punitive damages provided that a party "performs an act from which he knows, or should know, it is highly probable that harm will result."  Id.

In the instant matter, Plaintiffs' complaint sufficiently alleges that, amongst other actions, Defendants knew or should have known that causing Plaintiffs to participate in the interrogation of Turkish army soldiers would result in probable harm to Plaintiffs.  As Plaintiffs assert, "Defendants were aware ... that such an act would greatly anger the Turkish military and government and that great harm could result to any Turkish interpreter who was in Iraq, including Plaintiffs, if a Turkish citizen was used to assist in interrogations of Turkish soldiers."  Cplt. at ¶ 38.  Accordingly, because the complaint sufficiently alleges Defendants' conscious disregard of the safety of Plaintiffs and that Defendants' actions placed Plaintiff in great harm,

17

1   this Court DENIES Defendants' motion for judgment on the pleadings of Plaintiffs' claims for

2   punitive damages.

3         **C.**     **Contract Issues - (Claims 3-5)**

4         Defendants finally assert that Plaintiffs' claims in Claim 4 arising from an alleged breach

5   of an oral contract should also fail. Doc. No. 75 at 20. Defendants first assert that choice-of-

6   law principles reflect that California law should apply in the instant matter. Id. Defendants

7   contend that under California law, the statute of frauds bars Plaintiffs' actions for oral

8   employment contracts that lasts over one year. Id. at 22. Defendants also claim that the

9   alleged oral terms for compensation are too uncertain to give rise to an enforceable contract.

10  Id. at 23. In addition, Defendants assert that Plaintiffs do not state a claim for promissory

11  estoppel in Claim 3. Id. at 25. Defendants do not provide any argument, discussion or analysis

12  in support of their request for dismissal of Claim 5, breach of covenant of good faith and fair

13  dealing. Finally, Defendants contend that Plaintiffs' claim for contract damages are limited,

14  and that no punitive damages can lie for breach of contract. Id. at 28, 32.

15          1.   Choice of Law

16        Defendants present an analysis under both California Civil Code § 1646, as well as a

17  governmental interest analysis, to support their assertion that California law should apply in

18  the instant matter. Doc. No. 75 at 20. Plaintiffs do not rebut this contention. Doc. No. 81

19  at 23.

20        California Civil Code § 1646 states:

21        A contract is to be interpreted according to the law and usage of the place where it is to
      be performed; or, if it does not indicate a place of performance, according to the law and

22        usage of the place where it is made.

23  In the complaint, Plaintiff Dalkilic asserts that the work orally contracted for would take place

24  in Iraq. See Cplt. at ¶¶ 17-18. Plaintiff Celik asserts that he was employed by Defendants for

25  work in Mardin, Turkey, as well as in Iraq, but the oral contract complained of would consist

26  of work in Iraq. See id. at ¶¶ 26-28. Again, as both parties point out, Coalition Provisional

27  Authority No. 17 provides "that government contractors are not subject to Iraqi law" for

28  contract and tort claims, and therefore by default California law as the law of the forum state

    applies. Doc. No. 75 at 22; Doc. No. 81 at 10 ("CPA No. 17 precludes any sort of conflict

1   between California and Iraqi law).  Accordingly, under § 1646, California law would apply.

2        Under a governmental interest analysis, California law would also apply.  With contract

3   choice-of-law questions, California looks at the relevant contacts to determine the choice of law

4   to apply.   Janzen v. Workers' Compensation Appeals Bd., 61 Cal.App.4th 109, 115 fn. 3

5   (1997).

> California follows a "governmental interests" approach to choice of law questions.
> Section 188, subdivision (2) of the Restatement Second of Conflict of Laws lists the
> following relevant contacts: "(a) the place of contracting, (b) the place of negotiation of
> the contract (c) the place of performance, (d) the location of the subject matter of the
> contract, and (e) the domicile, residence, nationality, place of incorporation and place
> of business of the parties."  Under the governmental interests approach, these factors are
> examined "in connection with the analysis of the interest of the involved state in the
> issues, the character of the contract and the relevant purposes of the contract law under
> consideration."

11  Id.  (citations omitted).  Applying a governmental interest analysis, this Court finds that

12  California law would apply to the contracts at issue in the instant matter.  Accordingly, this

13  Court will apply California law.

14               2.    Statute of Frauds

15       Defendants assert that the statute of frauds bars Plaintiffs' alleged oral contracts in Claim

16  4, because it bars contracts for terms that exceed one year.  Doc. No. 75 at 22.  Defendants

17  point out as support that Plaintiffs in their complaint "contend that they were verbally

18  promised a job for a minimum of five years (and up to a maximum of ten years)."  Id.

19  Plaintiffs in response contend first that the oral employment contract would not be barred

20  under the statute of frauds because it "could have been terminated within one year."  Doc. No.

21  83 at 24.  Plaintiffs also assert that the doctrine of equitable estoppel precludes Defendants

22  from claiming that the statute of frauds bars any relief to Plaintiffs.  Id.

23       The statute of frauds in California bars relief where the duration of a contract exceeds

24  one year.  See Cal. Civ. Code § 1624 (A contract is invalid if by "agreement that by its terms

25  is not to be performed within a year from the making thereof.").  Plaintiffs suggest  that § 1624

26  does not apply to the instant oral contracts because Abeyta v. Superior Court, 17 Cal.App.4th

27  1037 (1993), found that the statute "'applies only to contracts which by their terms, cannot

28  possibly be performed within one year.'"  Id. at 683, quoting White Lighting Co. v. Wolfson,

68 Cal.2d 336 (1968).  In Abeyta, the appellate court noted that the California Supreme Court

in <u>Foley v. Interactive Data</u>, 47 Cal.3d 654 (1988), rejected the lower court's dismissal on statute of frauds grounds of plaintiff's oral employment contract claims, stating:

> Even if the original oral agreement had expressly promised plaintiff "permanent" employment terminable only on the condition of his subsequent poor performance or other good cause, such an agreement, if for no specified term, *could* possibly be completed within one year. Because the employee can quit or the employer can discharge for cause, even an agreement that strictly defines appropriate grounds for discharge can be completely performed within one year-or within one day for that matter.

<u>Id.</u> at 1043, quoting <u>Foley</u>, 47 Cal.3d at 671.  The appellate court in <u>Abeyta</u> went on to cite other cases that went beyond such terms, including cases that rejected the statute of frauds for oral employment contracts that promised "permanent employment" as long as the party performed satisfactorily.  17 Cal.App.4th at 1042-43, citing to <u>Foley</u>, 47 Cal.3d at 673, <u>Carnig v. Carr</u>, 167 Mass. 544 (1897).

Defendants in reply state that <u>Abeyta</u> is inapposite to the instant matter because the contract in <u>Abeyta</u> contained an oral option for early termination.  Doc. No. 83 at 11.  The Court notes that <u>Abeyta</u>, however, cites to numerous cases with no early termination option, and states that courts have rejected the application of statute of frauds because "a plaintiff could have (1) been discharged for cause; 2) retired, died or voluntarily left employment; or (3) been terminated if declining profitability compelled a general layoff or cessation of business altogether." 17 Cal.App.4th at 1042.  Defendants' arguments, therefore, are unpersuasive.

Defendants also cite to <u>Munoz v. Kaiser Steel Corp.</u>, 156 Cal.App.3d 965 (1984) as support for its position that Plaintiffs' oral contract are barred by the statute of frauds.  <u>Munoz</u>, however, relies on the California Supreme Court's decision in <u>Ruinello v. Murray</u>, 36 Cal.2d 687 (1951), which predates the Supreme Court's decision in <u>Foley</u>.  <u>Munoz</u>, therefore, does not appear to be reflective of the current state of California statute of frauds case law.  Accordingly, for the reasons stated above, this Court rejects Defendants' argument that the statute of frauds bars Plaintiffs' alleged oral contract.[6]

### 3. Uncertainty of Terms

Defendants next contend that Plaintiffs' oral contracts fail because of the uncertainty of

---

[6] Because this Court finds that the statute of frauds does not apply, the Court will not reach Plaintiffs' assertions of equitable estoppel.

terms of the contract.  Doc. No. 75 at 23.  Defendants assert that the compensation claimed, as well as the promises of hazard pay and equivalency, are too unspecified to form the basis of a contract.  Id. at 24-25.  Plaintiffs in response assert that the factual allegations contained in the complaint are specific enough to form the basis of a contract at this stage in the litigation.  Doc. No. 81 at 28.

"To form a contract, an 'offer must be sufficiently definite ... that the performance promised is reasonably certain.'"  Alexander v. Codemasters Group Ltd., 104 Cal.App.4th 129 (2002).  "The phrase 'reasonably certain' means the terms 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'"  Id., citing to Rest.2d Contracts, § 22, subd. (2).  "This definition of the requirement of certainty has been described as involving two questions: '[F]irst, did the parties intend to contract and second, is there a reasonably certain basis for giving an appropriate remedy.'"  Id., citing to 1 Williston on Contracts (4th ed. 1990) § 4:18, p. 425.

In the instant matter, the Court finds that, taking the factual allegations in the complaint as true and in a light most favorable to Plaintiffs, the contract terms here were sufficiently definite to form a contract.  Plaintiffs in the complaint point to definite salary terms, and point to the existence of specific bonuses, hazard pay and medical and social security benefits.  *See* Cplt. at ¶ 19 and 27.  That the amount of bonuses and other benefits is not specifically named or identified is not fatal to Plaintiffs' claim.  *See* Sabatini v. Hensley, 161 Cal.App.2d 172, 175 (1958) ("The failure to specify the amount or a formula for determining the amount of the bonus does not render the agreement too indefinite for enforcement.").  Additionally, it is not fatal to Plaintiffs' claim that the amount of consideration is not specified.  *See* id., citing to Cal. Civ. Code § 1610 ("It is not essential that the contract specify the amount of the consideration or the means of ascertaining it.").  Accordingly, this Court rejects Defendants' assertions that the oral contract alleged is indefinite and unenforceable.

### 4.   Promissory Estoppel

Defendants next assert that Plaintiffs' claim for promissory estoppel in Claim 3 fails because they fail to allege sufficient facts to support a claim for promissory estoppel.  Doc. No. 75 at 25.  In response, Plaintiffs contend that their claim for promissory estoppel is sufficiently

1   pled, and is also being asserted as an alternative liability claim should a trier of fact find

2   insufficient consideration for an oral contract.  Doc. No. 83 at 29.

3       Under California law, the elements of a promissory estoppel claim are: 1) a clear and

4   unambiguous promise; 2) reasonable and foreseeable reliance by the party asserting the claim;

5   and 3) injury as a result of a reliance on this promise.  <u>U.S. Ecology, Inc. v. Cal.</u>, 129

6   Cal.App.4th 887, 901 (2005).  In the complaint, Plaintiffs specify the terms of the promise,

7   including the salary promised, per diem and hazard pay, social security payments, adequate

8   security and promises of obtaining the specific permission from the Turkish government for

9   work in Iraq.  Cplt. at ¶ 66.  Plaintiffs additionally state that it was reasonable and foreseeable

10  that Plaintiffs would rely on the promises in order to be "convinced" to work in Iraq.  *See* Cplt.

11  at ¶ 19-22, 27.  Finally, Plaintiffs assert injury as a result of their reliance on the promise.  *See*

12  Cplt. at  ¶ 70.   Accordingly, this Court rejects Defendants' arguments and finds promissory

13  estoppel was sufficiently pled by Plaintiffs in the instant complaint.

14              5.   <u>Contract Damages</u>

15      Defendants next contend that Plaintiffs' alleged contract damages are limited only to

16  "the difference between what they were promised and what they actually received for the time

17  employed."  Doc. No. 75 at 28.  Defendants assert that Plaintiffs are not entitled to: 1)

18  emotional distress damages; and 2) punitive damages for any alleged breach of contract.  <u>Id.</u> at

19  29-30.  In addition, Defendants allege that the interrogation of Turkish military officers was

20  an unforeseeable consequence, and therefore cannot form the basis of any contract damages.

21  Defendants also contend that Plaintiffs are not entitled to damages for future pay or reliance

22  damages, and at most are entitled to a benefit of the alleged bargain damages.  <u>Id.</u> at 33-35.

23  Plaintiffs rebut Defendants' contentions, asserting instead that they are entitled to emotional

24  distress damages, punitive damages, damages extending from their participation in the

25  interrogation of the Turkish military officers, future pay damages and reliance damages.  Doc.

26  No. 81 at 31.

27              a.   <u>Emotional Distress Damages</u>

28      Defendants assert that Plaintiffs are not entitled to emotional distress damages for any

    alleged breach of contract.  Doc. No. 75 at 28.  Defendants contend that "[r]ecovery for

06cv1124

1   emotional disturbance [in contract cases] will be excluded unless the breach also cause bodily

2   harm or the contract or the breach is of such a kind that serious emotional disturbance was a

3   particularly likely result." Id., citing to Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7

4   Cal.4th 503, 515 (1994). In response, Plaintiffs argue that the complaint alleges sufficient facts

5   that rise to the level of damages such that "serious emotional disturbance was a particularly

6   likely result." Doc. No. 81 at 31, citing to Erlich v. Menezes, 21 Cal.4th 543, 548 (1999).

7   Plaintiffs also cite to several cases where the "contract at issue did not risk subjecting plaintiffs

8   to nearly the level of emotional distress damages that Plaintiffs faced here." Id. at 32, citing to

9   Windeler v. Scheers Jewelers, 8 Cal.App.3d 844, 852 (1970); Rogoff v. Grabowski, 200

10  Cal.App.3d 624, 633 (1988).

11          While the general rule is that emotional distress damages are not recoverable for breach

12  of contract, recovery for emotional disturbance may occur if the "breach also caused bodily

13  harm or the contract or the breach is of such a kind that serious emotional disturbance was a

14  particularly likely result." Erlich, 21 Cal.4th at 558, citing to Rest.2d Contracts § 353. In

15  Erlich, the California Supreme Court identified several cases where breach of a contract rose to

16  the level of a "serious emotional disturbance," including: Burgess, 2 Cal.4th 1064 (infant

17  injured during childbirth); Molien, 27 Cal.3d 916 (misdiagnosis and subsequent failure of

18  marriage); Kately v. Wilkinson, 148 Cal.App.3 576 (1983) (fatal waterskiing accident); Chelini,

19  32 Cal.2d 480 (failure to adequately preserve a corpse); Wynn v. Monterey Club, 111

20  Cal.App.3d 789 (1980) (agreement to exclude husband's gambling-addicted wife from clubs);

21  Ross v. Forest Lawn Memorial Park, 153 Cal.App.3d 988 (1984) (breach of agreement to keep

22  burial service private and to protect grave from vandalism); Windeler v. Scheers Jewelers, 8

23  Cal.App.3d 844 (1970) (loss of jewelry with great sentimental value).

24          In comparing the factual allegations of the complaint and these cases, and taking the

25  factual allegations in the complaint as true and in a light most favorable to Plaintiffs, this Court

26  finds that a reasonable fact finder may determine that Plaintiffs' complaint rises to the level of

27  allowing emotional distress damages for breach of contract. As discussed, Plaintiffs allege that

28  Defendants breached the agreement of providing security for Plaintiffs while working as

interpreters in Iraq, and that they would provide the necessary government approvals for

1   Plaintiffs to travel and work in Iraq.  The complaint alleges Defendants failed to do so,

2   subjecting Plaintiffs to extreme harm while in Iraq, as well as the inability to return back to

3   their home country.  It is reasonable that a trier of fact may find these allegations rise to the

4   level of causing a "serious emotional disturbance."   Accordingly, this Court DENIES

5   Defendants' motion for judgment on the pleadings of Plaintiffs' claim for emotional distress

6   damages as a result of a breach of the alleged oral employment contract.

7                    b.    Punitive Damages

8           Defendants also assert that punitive damages are not recoverable for an alleged breach

9   of an oral contract.  Doc. No. 75 at 30.  Plaintiffs rebut, stating that "punitive damages are

10  recoverable ... where the breach is also a tort for which punitive damages are recoverable."  Doc.

11  No. 81 at 32, citing to Quigely v. Pet, Inc., 162 Cal.App.3d 223 (1984).  Because this Court

12  finds that Plaintiffs' tort claims survive, the Court also DENIES Defendants' motion for

13  judgment on the pleadings of Plaintiffs' claim for punitive damages.

14                   c.    Turkish Military Interrogation

15          Defendants next contend that any harm arising from the interrogation of Turkish

16  military personnel was not a foreseeable consequence, and thus cannot be a breach of any

17  alleged oral contract.  Doc. No. 75 at 30.  In response, Plaintiffs assert that the oral contract

18  agreed upon called for "translation services for a variety of tasks, including translating

19  newspapers and dealing with local merchants."  Doc. No. 81 at 33.  Plaintiffs further allege that

20  the complaint sufficiently states that it was reasonably foreseeable that Plaintiffs lives would

21  be in danger if forced to interrogate Turkish military officers,  and that the danger to Plaintiffs

22  was compounded because Defendants did not obtain the Turkish government's permission prior

23  to arriving in Iraq.  Id.

24          The California Supreme Court has long recognized that damages for "unanticipated

25  injury" are not recovery under a breach of contract liability theory.  Hunt Bros. Co. v. San

26  Lorenzo Water Co., 150 Cal. 51, 56 (1906).  "Parties may voluntarily assume the risk of

27  liability for unusual losses, but to do so they must be told, at the time the contract is made, of

28  any special harm likely to result from a breach."  Lewis Jorge Cost. Management, Inc. v.

Pomona Unified School Dist., 960, 970 (2004).

Taking the factual allegations in the complaint as true, and in the light most favorable to Plaintiffs, this Court finds that the complaint sufficiently alleges reasonable foreseeability by Defendants of the alleged harm that arose to Plaintiffs as a result of Defendants' breach. Plaintiffs assert in the complaint that the contract called for translating services, which included "translating newspapers and dealing with local merchants."  Cplt. at ¶ 24.  Plaintiffs further allege in the complaint that it was "illegal for the Turkish interpreters to enter Iraq without government approval."[7]  Id. at ¶ 29.  Finally, the complaint alleges that Defendants forced Plaintiffs to interrogate the Turkish military officers in Kirkuk, Northern Iraq, which was an area of great tension between the Turkish government and the occupants of Northern Iraq, and despite the fact that Defendants had other non-Turkish employees who could perform the translating work.  A reasonable person could conclude from Plaintiffs' nationality and origin, as well as the surrounding war environment and posture of the political and military relations between Turkey and Northern Iraq, that Defendants could reasonably foresee the consequences of allegedly forcing Plaintiffs to participate in the interrogation the Turkish military officers, and the danger in which Plaintiffs were placed as a result of Defendants' actions.  The harm resulting from the alleged breach of contract is thus reasonably foreseeable. Accordingly, this Court DENIES Defendants' motion to dismiss Plaintiffs' breach of contract claims as not reasonably foreseeable.

d.   <u>Future Pay</u>

Defendants contend that Plaintiffs are not entitled to future pay damages.  Doc. No. 75 at 32.  Defendants assert that "'[w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary."  Id., quoting Rest. Contracts § 261.  Defendants argue that because the U.S. Government forced the termination

---

[7] Defendants provide a declaration from Attorney Cerrahoglu refuting Plaintiffs' allegations that the Turkish government requires prior approval before entering Iraq.  Doc. No. 75 at 31.  The Court will not consider Cerrahoglu's declaration refuting Plaintiffs' factual allegations without converting the instant motion into one under Rule 56.  Because Plaintiffs have not had an opportunity for discovery or to refute Cerrahoglu's statements, this Court declines to convert Defendants' motion at this time.

06cv1124

1    of the contract, Defendants should not be held liable and thus forced "to continue employing

2    Plaintiffs after the U.S. government's termination of the underlying contract ended the explicit

3    and understood purpose of the parties' alleged agreement." Id.  In response, Plaintiffs allege

4    that Defendants cannot rely on the doctrine of impracticability because it was through

5    Defendants' actions that the government terminated the interpreter contract services.  Doc. No.

6    81 at 34.

7          Whether or not the doctrine of impracticability bars recovery of future pay damages by

8    Plaintiffs is dependent upon whether "without his fault by the occurrence of an event the non-

9    occurrence of which was a basic assumption on which the contract was made." *See* Rest.2d

10   Contracts § 261.  As discussed, the Court has already found that it was reasonably foreseeable

11   to Defendants that Plaintiffs would be in danger if allegedly forced to interrogate Turkish

12   military officers in Kirkuk.  In addition, the complaint alleges that Defendants were aware of

13   this danger, and therefore are at fault for the consequences that occurred, including the directed

14   termination of Plaintiffs' services by the U.S. military as a result of the "negative publicity

15   generated in Turkey by the interrogation of the Turkish soldiers and the danger the Turkish

16   interpreters faced if they remained in Iraq." Cplt. at ¶ 38, 44.  Accordingly, taking the factual

17   allegations as true and in a light most favorable to Plaintiffs, the Court finds that the complaint

18   sufficiently alleges that Defendants were at fault for the resulting consequences, including the

19   termination of the use of Turkish interpreters, and thus DENIES Defendants' motion for

20   judgment on the pleadings to bar Plaintiff from claiming future pay as damages.

21          e.    Reliance Damages

22          Defendants finally assert that Plaintiffs are not entitled to reliance damages because the

23   damages claimed are too "speculative, remote, contingent or merely possible", and are not based

24   upon "substantial evidence." Doc. No. 75 at 33.  Defendants contend that Plaintiffs' assertions

25   that they "would have been gainfully and continuously employed in Turkey during the period

26   of March to July 2003 - let alone for their entire lives - or that they would have been earning

27   an amount greater than $1500 per month in Turkey would be wholly conjectural and

28   speculative." Id.  In response, Plaintiffs assert that at this stage in the litigation "Plaintiffs are

     not required to set forth precise numbers and facts including all of the details of their past lives

to prevail on a motion to dismiss." Doc. No. 81 at 35.

As stated, on a motion for judgment on the pleadings, this Court must accept as true all factual allegations in the complaint. Plaintiffs here have alleged that they are entitled to loss of earnings, including future pay, as a result of Defendants' alleged breach of the oral contract. Plaintiffs should not be required to prove their damages in opposition to this motion to the extent that Defendants now claim, and thus such a claim by Defendants cannot form the basis of a dismissal at this stage. For these reasons, this Court DENIES Defendants' motion for judgment on the pleadings of Plaintiffs' future pay damages.

## CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for judgment on the pleadings [Doc. No. 75] is **GRANTED IN PART** and **DENIED IN PART**:

1.   Defendants' motion for judgment on the pleadings of Plaintiffs' First and Second causes of action for fraud and deceit and negligent misrepresentation is **GRANTED.**

2.   Defendants' motion for judgment on the pleadings of Plaintiffs' Third (promissory estoppel); Fourth (breach of oral contract); Fifth( breach of the covenant of good faith and fair dealing); and Sixth (intentional infliction of emotional distress) causes of action is **DENIED**.

3.   Defendants' motion for judgment on the pleadings of Plaintiffs' Seventh cause of action for negligence is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** for events occurring in Pennsylvania only. For all other actions occurring outside of Pennsylvania, Defendants' motion is **DENIED**.

**IT IS SO ORDERED**.

DATED: August 29, 2007

HON. JOHN A. HOUSTON
United States District Judge

06cv1124

06cv1124